UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

   -v-                              CASE NO: 5:17-CR-0365 (DNH)

SHACAREY JAMES,
                        Defendant.

---

# MOTION FOR COMPASSIONATE RELEASE PURSUANT TO 18 U.S.C. § 3582(C)(1)(A)

DATED: December 16, 2020             Respectfully submitted,

                                      LISA A. PEEBLES
                                      Federal Public Defender

                    By:   Courtenay K. McKeon, Esq.
                           Assistant Federal Public Defender
                           Bar Roll No. 515841
                           Clinton Exchange, 3rd Floor
                           4 Clinton Square
                           Syracuse, New York   13202
                           (315) 701-0080

**<u>Preliminary Statement</u>**

Shacarey James, an inmate at the Camp at FCI Danbury, is seven months pregnant. Her pregnancy places her at increased risk for severe illness, including preterm labor, if she contracts COVID-19.  There are currently nearly 100 active cases of COVID-19 at FCI Danbury. The facility's failure to respond appropriately to the pandemic has required the intervention of the federal courts in response to a class action lawsuit. In addition to the dangers of the pandemic, Ms. James is not receiving adequate prenatal care. By this motion, Ms. James seeks immediate compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A).

**I.      FACTUAL BACKGROUND**

On July 30, 2020, Ms. James admitted violating the conditions of her supervised release by (1) failing to report police contact with 72 hours of a domestic incident; and (2) testing positive for marijuana. (Text Minute Entry July 30, 2020; Dkt. No. 53.) Her Guideline sentence was three to nine months. The Court sentenced her to nine months of incarceration. (Dkt. No. 59.)

Ms. James is seven months pregnant. (James Aff. ¶ 2.) She is incarcerated in the Camp at FCI Danbury. *Id.* ¶ 1. She arrived there on September 8, 2020, when the COVID-19 pandemic was already well under way. *Id.* The facility, however, was not taking steps to protect its inmates. This was despite the fact that FCI Danbury has been identified since early in the pandemic as a particularly dangerous facility.[1]  COVID-19 has run rampant at FCI Danbury, both in the Camp and the main prison facility. The BOP's website states that there are currently 97 active cases of COVID-19 at the facility. *See* https://www.bop.gov/coronavirus/. FCI

---

[1] In his April 3 Memo to the Bureau of Prisons, Attorney General Barr singled out FCI Danbury and two other institutions as being particularly impacted by COVID-19.

Danbury's handling of the pandemic is the subject of a class action lawsuit that was resolved by settlement. *Martinez-Brooks v. Easter*, No. 3:20-CV-0569 (MPS) (D. Conn). The District of Connecticut has retained jurisdiction over the case to monitor enforcement of the settlement agreement. (*Id*. at Dkt. No. 241.) That court has been required to intervene to force the facility's compliance with the agreement. (*Id*. at Dkt. No. 289.)

Ms. James's experiences at FCI Danbury demonstrate the facility's failure to properly respond to the pandemic. Although temperature checks were being done when Ms. James first arrived at the Camp, the facility stopped doing them shortly thereafter and resumed again only in December. *Id*. ¶ 5. Recently, a woman whose bed was three feet away from Ms. James's was very sick for several days with classic COVID symptoms including difficulty breathing, a high fever, and a loud cough. *Id*. ¶ 7. The inmates in the unit complained to their counselors on Monday, December 7, 2020, that the woman should be quarantined and tested. *Id*.  The inmates asked the counselors, at the very least, to move Ms. James away from the woman because of her advanced pregnancy. *Id*. The counselors refused and said that it was Ms. James's "hormones" making her "anxious." *Id*. On December 8, 2020, the woman tested positive for COVID-19 and was removed from the unit. *Id*. However, no steps were taken to decontaminate the area. The woman's belongings were left in the unit. *Id*.  Scraps of food remained in a tray in her room. *Id*. Nothing was sanitized after she left. *Id*.

Since arriving at FCI Danbury in September, Ms. James has been seen by a doctor only a few times. (James Aff. ¶ 3.) The doctor has informed her that she will not receive an ultrasound examination during her pregnancy. *Id*. When lawyers handling the class action lawsuit against the facility complained about the lack of prenatal care Ms.  James was receiving, the BOP's solution was to propose transporting Ms. James to a facility in Texas. *Id*. ¶¶ 10-11.

Ms. James is very frightened about what may happen to her and her unborn child if she is required to remain at FCI Danbury. (James Aff. ¶ 13.)  She is even more frightened of what may happen to her and unborn child if she is sent to Texas. *Id.* Being transferred to a place that far away will mean being moved from facility to facility by many different vans, buses, and possibly airplanes, each time getting exposed to more people who may carry the virus. *Id.* In addition, being that far from her home in Syracuse would mean that her partner and two-year-old child could not travel to be near her during labor and after the birth of her baby. *Id.* ¶ 12.

Ms. James filed a request for compassionate release with the Warden of FCI Danbury in early October. (James Aff. ¶ 9.) That request was denied. *Id.* She has, therefore, exhausted her administrative remedies. If released, Ms. James would return to live with her partner and two-year-old in Syracuse. *Id.* ¶ 14.

## II.    ARGUMENT

### A.  Standard for Compassionate Release

A court may grant compassionate release "after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—[] extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). Currently, there are no applicable Sentencing Commission policy statements. The Second Circuit recently held that "Application Note 1(D) [to U.S.S.G. § 1B1.13] does not apply to compassionate release motions brought directly to the court by a defendant under the First Step Act . . . ." *United States v. Brooker,* 976 F.3d 228 (2d Cir. 2020).  Rather, "the First Step Act freed district courts to exercise their discretion in determining what are extraordinary circumstances." *Id.* at *5. *See also United States v. McCoy,* No. 20-6821, 2020 WL 7050097 (4th

4

Cir. Dec. 2, 2020); *United States v. Jones*, 980 F.3d 1098 (6th Cir. 2020); *United States v. Gunn*, 980 F.3d 1178 (7th Cir. 2020). Here, as discussed below, extraordinary and compelling reasons warrant compassionate release and the factors under § 3553(a) support release.

> **B. Extraordinary and Compelling Reasons for Compassionate Release Exist in the Case Because of the COVID-19 Pandemic, Ms. James's Pregnancy, the Lack of Appropriate Care at FCI Danbury, and the Danger that Transport to a Different Facility Presents.**

Extraordinary and compelling reasons for compassionate release exist in this case because of the COVID-19 pandemic, Ms. James's pregnancy, the lack of appropriate care at FCI Danbury, and the danger that transport to a different facility presents. COVID-19 is rampant at FCI Danbury, with 97 confirmed cases in the facility as of December 16, 2020. The facility has not taken appropriate steps to curb the spread of the disease, despite having been identified early in the pandemic as a hotspot of the virus. Testing is not consistent, appropriate sanitizing is not taking place, and inmates with COVID-19 symptoms remain in close contact with other inmates. Ms. James is particularly at risk in this situation because of her pregnancy. The Centers for Disease Control and Prevention advise that "pregnant people are at an increased risk for severe illness from COVID-19 compared to non-pregnant people. Additionally, pregnant people with COVID-19 might be at increased risk for other adverse outcomes, such as preterm birth." https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/pregnancy-breastfeeding.html. In addition to the danger that Ms. James and her unborn child face from the spread of the virus at the facility, they face additional risk because of the facility's failure to provide adequate prenatal care. Ms. James is not being seen regularly by a doctor. She has been advised that she will never be able to undergo an ultrasound, which is a standard diagnostic tool during pregnancy. The facility's response to complaints from class action counsel has been to

propose moving Ms. James to a facility in Texas. Such a move would place Ms. James at even

higher risk due to the commonplace spread of the virus during transport. *See, e.g.*,

https://www.themarshallproject.org/2020/08/13/con-air-is-spreading-covid-19-all-over-the-

federal-prison-system. Further, moving Ms. James such a long distance would prevent her

partner and her two-year-old child from being near her during labor and after the birth of her

baby, because they live in Syracuse and are not able to travel thousands of miles. Accordingly,

extraordinary and compelling reasons support compassionate release for Ms. James.

    **C. The 18 U.S.C. § 3553(a) Factors Weigh in Favor of Compassionate Release.**

    As noted above, the Court must consider the factors under 18 U.S.C. § 3553(a) when

considering compassionate release.  These factors include (1) the nature and circumstances of the

offense and the history and characteristics of the defendant; (2) the need for the sentence

imposed— (A) to reflect the seriousness of the offense, to promote respect for the law; and to

provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and (D) to provide the defendant

with needed educational or vocational training, medical care, or other correctional treatment in

the most effective manner. Here, each of these factors support compassionate release.

    Regarding the nature and circumstances of the offense, Ms. James is incarcerated for

non-violent Grade C violations of the terms of her supervised release. The time that she has been

imprisoned reflects the seriousness of the offense, promotes respect for the law, provides just

punishment for the offense, and affords adequate deterrence to criminal conduct because Ms.

James has already served four and a half months in custody, which is a mid-Guideline sentence.

Those four and a half months of incarceration have been more punitive than such a sentence

would be under normal conditions due to FCI Danbury's mishandling of the pandemic and

failure to provide adequate prenatal care. The community would not be at risk if Ms. James were released because she has no history of violence. Accordingly, the defense respectfully requests that the Court grant Ms. James's motion for compassionate release.

### Conclusion

Ms. James's pregnancy places her at increased risk for severe illness, including preterm labor, if she contracts COVID-19. There are currently nearly 100 active cases of COVID-19 at FCI Danbury, where she is confined. The facility's failure to respond appropriately to the pandemic has required the intervention of the federal courts in response to a class action lawsuit. In addition to the dangers of the pandemic, Ms. James is not receiving adequate prenatal care. The defense thus respectfully requests that the Court grant Ms. James immediate compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A).

DATED: December 16, 2020

LISA A. PEEBLES
FEDERAL PUBLIC DEFENDER
By:    */s/ Courtenay K. McKeon, Esq.*
Assistant Federal Public Defender
Bar Roll No. 515841
Clinton Exchange, 3rd Floor
4 Clinton Street
Syracuse, New York   13202
(315) 701-0080

To:    Tamara Thomas, AUSA (by ECF)
Danbury class counsel (by email)
Shacarey James (by mail)